[Civ. No. 5345.   Fourth Dist.   Feb. 18, 1957.]

M. FRIIS-HANSEN AND COMPANY (a Copartnership) et al., Appellants, v. JAMES J. IMPERATRICE, Respondent.

Lewis W. Boies, Jr., for Appellants.

Stutsman, Hackett & Nagel for Respondent.

BARNARD, P. J.—On March 1, 1948, the plaintiffs leased about 500 acres of land to one Maggini for a term of five years.   The lease provided that the lessee should pay as rent 25 per cent of all crops grown; that the lessee should not assign the lease without the written consent of the lessor; that the lessee should accept the premises ''in their present condition,'' (including a power plant and pump to be installed as soon as possible and for which orders had already been placed) ; that the lessee should plant to cotton and other crops ''as many acres as can be irrigated from the water supply,'' and pay for all water, power or fuel to be used in irrigating the land ''in a farm-like manner''; that at the expiration of the lease the lessee should surrender the premises ''in as good condition as when received, reasonable use

and wear thereof excepted"; and that the lessor should not be liable for any damage to any property "in or upon the demised premises however caused, other than by the wrongful act of the Lessor, and the Lessee hereby agrees and undertakes to hold and save the Lessor harmless therefrom."

Shortly after the execution of the lease the plaintiffs installed a pump and a butane engine on the property, and Maggini farmed the property until August 31, 1949. Shortly after the installation of the butane engine Maggini replaced it with a Diesel engine. At some time prior to August 31, 1949, Maggini replaced the Diesel engine with an electric motor which he had purchased under a conditional sale contract.

On August 31, 1949, Maggini assigned this lease to the defendant Imperatrice, who signed an acceptance of the assignment in which he agreed to carry out and perform all the terms and conditions of the lease, and the plaintiffs signed a consent to that assignment. Imperatrice farmed the place from that time until the expiration of the lease. During the crop season of 1950 the flow of water from the well fell off and late that year Imperatrice had the pump taken out of the well in an effort to find out the cause of the trouble. About December 1, 1950, the electric motor which had been installed by Maggini was repossessed by the vendor thereof because of Maggini's default in payment. In January, 1951, Imperatrice bought and installed another electric motor and another pump, and made extensive repairs and improvements to the well. He then continued to operate the property until the lease expired. He vacated the property in February, 1953, and removed the pump and motor which he had installed, claiming them as his own.

The complaint in this action alleged that the defendant owed the plaintiffs $2,863.43 as the lessor's share of a barley crop produced in 1952. It also sought recovery on two other matters which are not material on this appeal. The defendant's answer admitted that the amount would otherwise be due on the barley crop, but denied that anything was due because of the matters alleged in his cross-complaint. He also filed a cross-complaint alleging that under the lease the plaintiffs agreed to install a power plant, pump and well, to be used by the lessee in irrigating the land; that before September 8, 1949, the premises were equipped with a complete well, power plant and pump which were used for that purpose; that during the 1950 season the defendant notified

the plaintiffs that the pump and well were not producing enough water; that shortly before December 2, 1950, the defendant caused the pump to be examined and the pump was found to be inefficient to produce sufficient water to irrigate the premises; that on December 2, 1950, the defendant notified the plaintiffs that the electric motor had been repossessed "by the conditional seller" and demanded that the plaintiffs install a motor and other equipment necessary for the efficient operation of said well and pump; that the plaintiffs refused to comply with this demand; that because of said refusal it became necessary for the defendant to purchase and install a pump and motor and do other work necessary for the purpose of producing sufficient water; that this was done at a cost of $8,000; and that the defendant has been damaged in that amount.

A jury brought in a verdict in favor of the plaintiffs for $2,863.43 and a further verdict in favor of the defendant on his cross-complaint awarding him damages in the sum of $4,130.93. Judgment was entered in favor of the plaintiffs for $2,863.43 and in favor of the defendant for $4,130.93. The plaintiffs moved for a new trial with respect to that part of the judgment, based upon the cross-complaint, which is in favor of the defendant. At the close of the arguments on the motion for a new trial the court stated that he regarded the evidence as insufficient to support a finding that the plaintiffs had breached any contract. Counsel asked for further time in which to present authorities and also in which to negotiate a settlement. No authorities or settlement was forthcoming, and the court later entered an order granting a new trial. However, this order was ineffective since it was entered too late (Code Civ. Proc., § 660), after the motion for a new trial was denied by operation of law. The plaintiffs then appealed from that part of the judgment which is in favor of the defendant.

The appellants contend that the evidence was not sufficient to support a verdict for the cross-complainant in any amount. It is argued that under the terms of the lease the appellants were not obligated to repair or replace any pump or power equipment on the well after the time the well was first put down and equipped; that the court correctly instructed the jury that the lease as written did not place any such obligation on the appellants; that there was no substantial evidence that the appellants had made a subsequent oral promise to repair the well and replace the pump and power plant

so that sufficient water could be produced; and that there was no consideration for such a promise had it been made. It is further argued that under the evidence it was error for the court to instruct the jury that the defendant claimed that by some sort of oral promise the plaintiffs had promised, for a valuable consideration, to repair the well and replace the pump and power plant so that sufficient water could be pumped, and that they had failed to do this; and further to instruct the jury that if it found that the plaintiffs had, for a valuable consideration, made such a promise and found that they failed to fulfill the same, and if it further found that in order to preserve his crops the defendant necessarily expended a sum to repair the well and replace the pump and motor, it should find for the defendant in such sum as the evidence showed he had been forced to expend for protection of the crops, if any.

The respondent contends that the evidence is sufficient to support this part of the judgment and that the court properly left to the jury the question as to a subsequent promise, for a valuable consideration, to repair the well and replace the pump and power plant. It is argued that the jury must have found that the appellants did promise for a valuable consideration to repair the well and replace the pump and power plant so that sufficient water could be produced; that the expression ''I am going out to buy the kid a pump'' clearly implies such a promise; that when the appellants let the respondent into possession of the land they inferentially represented that the power plant, pump and well then on the premises would remain and could be used by the respondent; that the appellants did not inform the respondent that the power plant belonged to some conditional seller; that since his cross-complaint contained a second count for money had and received the respondent was entitled to present evidence of fraud; and that the record establishes that a fraud was obviously practiced.

It clearly appears from the record that a new trial should have been granted, that the court intended to grant one, and that the failure to accomplish that purpose was due entirely to an inadvertence in connection with the time element. The original lease clearly provided that the appellants should install certain equipment only, and that the lessee should take the premises in that condition. It is conceded that this equipment was so installed. Under the lease subsequent repairs were the obligation of the lessee, and the lease did

not provide that the lessor should provide sufficient water to irrigate the leased premises. It merely provided that the lessee should plant and irrigate such crops as could be irrigated from the water supply made available by the original equipment. Maggini testified that he bought the first electric motor without any consent from the appellants and that "It was on my own." There is no evidence that the appellants knew that Maggini had not paid for this equipment. It clearly appears that the appellants were not liable to the respondent, in the respect here in question, under the original lease.

There is no satisfactory evidence of a subsequent promise or agreement on the part of the appellants, for a valuable consideration, to repair the well and replace the pump and power plant so that sufficient water could be produced. The only evidence in this connection is that the respondent employed a pump firm to pull the old pump and inspect it. He then made an appointment with Mr. Friis-Hansen to go out shopping for a pump. Imperatrice testified that as they left the office a secretary asked Mr. Friis-Hansen where he was going, and he replied "I am going out to buy the kid a pump"; that they went to a pump company but Mr. Friis-Hansen did not buy a pump; and that two days later Mr. Friis-Hansen told him that he would not buy a pump and that "I am washing my hands of the whole thing." The respondent testified that thereafter, on December 13, 1950, he placed an order with a pump company for a complete outfit, including a new pump, a switch board and an electric motor; that this outfit cost $6,000 and was installed two or three weeks later; that he used this outfit during the years 1951 and 1952; that he took the outfit away when he left; and that he owned the outfit. He also testified that he spent $1,764.50 in servicing and improving the well on the premises, and other sums in that connection.

The respondent took an assignment of this lease from Maggini and assumed his obligations. He knew what was in the contract and there is no evidence that any representations of any kind were made to him by the appellants when they consented to that assignment. The appellants' only obligation under the lease was to place certain equipment on the property in the beginning, which they did. Maggini replaced the engine with an electric motor without the appellants' consent, and there is no evidence that they knew that this was not paid for. If Maggini had continued to the end

of the lease he could not have held the appellants responsible for the new equipment which was later installed. It was Maggini's obligation to keep a pumping plant on the premises, and the respondent stood in Maggini's shoes.

While there was some talk between Mr. Friis-Hansen and the respondent about purchasing a new pump there was no definite promise or agreement on the part of the appellants, and there would have been no consideration had such a promise been made since the obligation to maintain the pumping plant was one already resting upon the respondent. In any event, there was no evidence that the appellants promised to buy anything except a pump, and no evidence of any promise to buy a new electric motor. After they refused to buy a pump, the respondent bought a pump and an expensive motor and other equipment, which he continued to use for the remaining two years, and he then claimed the equipment as his own although the lease required that the premises be surrendered in as good condition as when received, except for reasonable use and wear. There is no evidence of fraud, and no evidence that the respondent made any further demand on the appellants until after this suit was brought. His cross-complaint did not allege any new promise or agreement on the part of the appellants, and such a claim was first raised during the trial. The instruction given was not justified by the terms of the lease or the evidence concerning a subsequent promise. The promise now relied on is the promise to buy a new pump, and there is no evidence as to what the new pump cost. If it should be conceded that such a promise was made, and that a sufficient consideration appears, there was no evidence which would enable the jury to segregate the various items of expense and to properly ascertain any amount which could reasonably be attributed to that oral promise. Under the instructions given the jury could, and apparently did, include in its allowance of damages items which were not within the scope of the subsequent promise now claimed to have been made. On the record before us, it clearly appears that this part of the action should be retried, which fact was recognized by the trial court.

The portion of the judgment appealed from is reversed.

Griffin, J., and Mussell, J., concurred.